[Civ. No. 21497.   Second Dist., Div. Three.   Nov. 30, 1956.]

IRA LEE BURCH, Appellant, v. THE HIBERNIA BANK et al., Respondents.

Carl Hoppe, Donald B. Jarvis and James M. French for Appellant.

Richard Raoul-Duval, Tobin & Tobin, Moses Lasky, Brobeck, Phleger & Harrison, Marlon F. Schade, O'Melveny & Myers, Sidney H. Wall, Everett B. Clary, Twitchell & Rice and W. C. Rice for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment of dismissal entered after an order sustaining defendants' demurrers to his complaint as amended without leave to amend. The action is for restoration of a leasehold, and for damages for alleged fraud arising out of an oil lease acquired by plaintiff in 1934 covering Cuyama Rancho in San Luis Obispo and Santa Barbara counties.

The complaint as amended alleges:

In 1930 Edward and Ralph Cebrian were the owners of

Cuyama Rancho, to be referred to as Cuyama. On August 23, 1930, they executed to I. E. Martin an oil and gas lease covering 3,100 acres.[1] Martin assigned his interest in the lease to plaintiff.

On September 24, 1930, the Cebrians executed a mortgage covering Cuyama to defendant Hibernia Bank, to be referred to as Hibernia. On December 27, 1932, they executed a second mortgage covering Cuyama to Hibernia. On April 11, 1934, the mortgages were in default, and on that date Hibernia gave notice of the breach and of its election to sell.

On May 29, 1934, the Cebrians executed to plaintiff an oil and gas lease of all of Cuyama except the 3,100 acres. The lease was for 20 years and so long thereafter as oil or gas could be produced in paying quantities.[2]

On June 23, 1934, Hibernia, in order to induce plaintiff to prospect Cuyama, excepted from the operation of the liens of its mortgages all petroleum produced on condition that petroleum in paying quantities be produced prior to May 29, 1937.

On August 18, 1934, during the pendency of the foreclosure proceedings, Ralph Cebrian conveyed his interest in Cuyama to Edward Cebrian. On August 23, 1934, Edward Cebrian filed a petition and schedule for a composition of creditors in the United States District Court, pursuant to the farmer-debtor provisions of the federal bankruptcy law. On August 23, 1934, the United States District Court entered an order restraining Hibernia from selling Cuyama under the power of sale contained in the mortgage of September 24, 1930, or under any other authority at all until further order of the court.

On January 3, 1935, Hibernia concluded a composition with Edward Cebrian and with certain creditors of his in which:

1. Hibernia agreed to accept $450,000 in satisfaction of its claim and lien against Cuyama.

2. In lieu of $450,000 in cash, Hibernia agreed to accept a deed from Edward Cebrian conveying clear title to Cuyama subject only to taxes, and Edward Cebrian agreed to convey it to Hibernia.

3. Hibernia agreed to execute and deliver to Edward Cebrian a lease of Cuyama for the term of three years, with

---

[1] All documents relevant to this action were duly recorded.

[2] Plaintiff does not assert any rights under the lease of August 23, 1930. He asserts rights solely under the lease of May 29, 1934.

an option to purchase at any time during the term of the lease for $450,000 plus interest and taxes.

4. Hibernia, Edward Cebrian, and the creditors agreed that the farmer-debtor proceedings be dismissed.

On January 17, 1935, the United States District Court entered an order confirming the foregoing arrangement and dismissing the farmer-debtor proceeding on the condition, among others, that "no action be taken by any person, firm or corporation . . . to attach or execute upon the property of Edward Cebrian, real or personal, nor to enforce any liens thereon during the operation of the lease executed by Hibernia to Edward Cebrian."

Hibernia cancelled its mortgage notes and satisfied the debts due to it, and on January 1, 1935, granted Edward Cebrian the three-year lease and the option to purchase the property at any time during the term of the lease for $450,000.

On March 11, 1935, Hibernia caused to be executed to itself a deed purporting to foreclose the mortgage of September 24, 1930, under the power of sale contained therein. On March 15, 1935, Edward Cebrian executed a quitclaim deed conveying Cuyama to Hibernia.

From May 29, 1934, until May 29, 1937, plaintiff fully performed all of the terms and conditions of the leases of August 23, 1930, and May 29, 1934, without locating petroleum in paying quantities on or before May 29, 1937.

On May 11, 1937, Hibernia represented to plaintiff it had foreclosed the mortgage, that the May 29, 1937, termination date recited in its subordination of June 23, 1934, was in effect, and plaintiff's interest in the petroleum would be lost if he did not locate oil in paying quantities within the time provided therein. At the time Hibernia made the representations it knew the mortgage foreclosure deed was void because the federal court order prohibited such foreclosure and because it had satisfied the debt secured by the mortgage. Plaintiff relied on the representations and at all times between May 29, 1937, and January 9, 1950, he believed his interest in the petroleum located on Cuyama had been lost except for the extensions granted by Hibernia; he did not know and had no reason to know the federal court had entered any order prohibiting the enforcement of any liens against Cuyama or that the debt secured by the mortgage had been satisfied.

Plaintiff was confident that with further prospecting he

would be able to locate petroleum on Cuyama and he entreated Hibernia to give him more time. By threats of cancellation, termination, and eviction, Hibernia persuaded plaintiff to quitclaim his interest and to permit it to quiet the title in exchange for its promise to permit plaintiff to prospect until March 9, 1938, for petroleum in paying quantities. Plaintiff relied on the representations and accepted the offer. On June 17, 1937, plaintiff executed a quitclaim deed to Hibernia which he delivered in escrow with the understanding that it was to be delivered to Hibernia in the event he did not discover petroleum in paying quantities on or before March 9, 1938.

Hibernia commenced a suit to quiet title, naming plaintiff and others as parties defendant. Plaintiff permitted a default to be entered against him and "cooperated with Hibernia to make possible the successful completion of the action to quiet title."

Plaintiff continued to prospect for petroleum but failed to locate any in paying quantities by March 9, 1938. Immediately thereafter Hibernia advised him that his interest in Cuyama was irretrievably lost. Again plaintiff asked for further time to locate petroleum. On March 11, 1938, Hibernia advised him it would not extend the lease and it recorded the quitclaim deed.

After March 9, 1938, Hibernia negotiated a new lease with plaintiff covering 6,000 acres included in Cuyama and in exchange extracted from plaintiff an acknowledgment that Hibernia was sole owner of Cuyama in fee simple and that possession was to be surrendered to it, and it required plaintiff and his wife to execute a quitclaim deed dated May 21, 1938. At all times after December 1938 Hibernia refused to permit plaintiff to prospect on Cuyama for petroleum.

On June 10, 1940, Hibernia obtained a decree of the superior court of Santa Barbara County quieting title to the property against plaintiff and others. In order to obtain the judgment, Hibernia offered in evidence the foreclosure deed and the quitclaim deed of June 17, 1937, and the court relied on them in entering its judgment. Hibernia concealed from the court that the United States District Court had prohibited execution of the foreclosure deed and the fact that it had obtained the quitclaim deed from plaintiff by means of the representations, promises, and acts alleged.

By deed dated October 2, 1940, and by a correction deed dated December 12, 1941, Hibernia conveyed Cuyama to

defendant Hubbard S. Russell. In January 1948 one George Hadley, acting for defendant Norris Oil Company, located petroleum in paying quantities on Cuyama. On information and belief, the remaining defendants thereafter caused petroleum having a value in excess of $100,000,000 to be removed therefrom. On information and belief, the value of the petroleum remaining on Cuyama is $1,000,000,000.

Plaintiff never at any time prior to January 9, 1950, suspected that Hibernia misrepresented the status of the title of Cuyama. At that time one Charles J. Colville, then a stranger to plaintiff, called on him and advised him that he thought plaintiff had a continuing interest in the petroleum located on Cuyama. Plaintiff told Colville some of the facts pleaded in the complaint and the two commenced a detailed investigation. On May 3, 1950, plaintiff for the first time learned that the debts secured by the mortgages had been satisfied prior to May 29, 1937, and that there was in existence a court order which prohibited the foreclosure of the mortgage. It was not until after that date that plaintiff learned for the first time that his oil and gas leases were in full force and effect on May 29, 1937, the date which Hibernia had falsely represented to be the termination of his interest in the lease of May 29, 1934.

Plaintiff has at all times since May 29, 1934, been ready, willing, and able to perform his obligations under the lease of that date and his performance has been prevented only by the acts of defendants.

Plaintiff prays for possession and restitution of his leasehold on Cuyama; for $1,000,000,000 damages for withholding the leasehold; and for $100,000,000 damages for the value of the petroleum which defendants have removed.

Defendants' demurrers were sustained without leave to amend on the ground the complaint does not state facts sufficient to constitute a cause of action in that it shows on its face plaintiff's claims are barred as res judicata by the judgment entered June 10, 1940, by the superior court of Santa Barbara County in the suit to quiet title brought by Hibernia against plaintiff and others. The ground on which the trial court sustained the demurrers is fatal to plaintiff's case.

The complaint in the present action identifies the suit to quiet title brought by Hibernia. The complete judgment roll in the latter suit is included in the briefs and the parties agree it is to be considered a part of the complaint in the present action. ▪ The defense of res judicata may be raised

by demurrer where the facts which give rise to it appear in the complaint. (*Weil* v. *Barthel*, 45 Cal.2d 835, 837 [291 P.2d 30]; *Willson* v. *Security-First Nat. Bank*, 21 Cal.2d 705, 710 [134 P.2d 800]; *Freeze* v. *Salot*, 122 Cal.App.2d 561 [266 P.2d 140].)

Hibernia filed its suit to quiet title on September 21, 1937. It named plaintiff and one D. G. Donahue, among others, as parties defendant. The complaint in that suit alleged Hibernia was the owner in fee simple and in possession of Cuyama; in subparagraph A of paragraph III, that each defendant claimed some interest therein but that such claim was unfounded, and no defendant had any interest except by lease dated May 29, 1934, executed by Edward and Ralph Cebrian, Burch is lessee of Cuyama for the purpose of mining and operating for oil and gas; Hibernia gave its written consent to the lease; the consent was given on the condition "that the said lease should cease and terminate if oil in paying quantities was not produced within three years from the date of said lease, to-wit: within three years from the 29th day of May, 1934;" on August 20, 1937, Hibernia by a written instrument granted Burch an extension of the lease of May 29, 1934 until March 9, 1938, wherein Burch agreed that Hibernia "shall, on the 10th of March, 1938, be the owner of the real property . . . said lease dated May 29, 1934, shall terminate and end on said 9th day of March, 1938, unless oil or gas in paying quantities . . . shall on or before said 9th day of March, 1938, be produced"; and Burch was the lessee "under a valid and subsisting lease" of the property covered by the lease of May 29, 1934 "subject, however, to termination without notice on the 9th day of March, 1938, in the event . . . that oil or gas in paying quantities . . . shall not have" been produced by that date. The complaint prayed that: 1. Each defendant be required to set forth the nature of his claim and that all adverse claims be determined. 2. It be decreed none of the defendants had any right, title, interest or estate in any part of Cuyama "except the rights, title, interest and estate of the defendants specifically named in subparagraphs (A), (B) and (C) of paragraph III of this complaint, all as particularly set forth in said Paragraph III." 3. It be decreed Hibernia was the owner of Cuyama in fee simple and each defendant be enjoined and debarred from asserting any claim whatsoever in or to the property and premises adverse to Hibernia "except only the rights, title, interest or estate of the defendants specifically named

in subparagraphs (A), (B) and (C) of paragraph III of this complaint, all as in said paragraph III particularly set forth.'' Burch did not answer the complaint.

The defendant Donahue filed a cross-complaint in the Hibernia suit to quiet title. On June 24, 1938, Burch, after the time in which he had to locate oil or gas on Cuyama had expired, filed a verified answer to the cross-complaint of Donahue in which he alleged he had ''no right, title, interest, equity or estate in or to said real property or any part or parcel thereof under said lease dated the 29th day of May, 1934.''[3]

The findings in the suit to quiet title recite that the case came on for trial on the complaint and various answers, including plaintiff's answer to Donahue's cross-complaint. The court found and concluded that each and every lease to Cuyama, and to any portion thereof, ''and each and every renewal or extension thereof, had lapsed, and that none of the said lessees . . . have any right, title, claim or interest in or to said property, or any portion thereof.'' The judgment, dated June 15, 1940, was that Hibernia was the owner in fee simple and in possession of Cuyama and that none of the de-

[3]Burch's answer to the cross-complaint read: ''denies that he claims or asserts any estate or interest in or lien upon the property and premises described in the said cross-complaint, or any part thereof, adverse to said defendant and cross-complainant, said D. G. Donahue, and in that behalf alleges that by a lease dated the 29th day of May, 1934, from Edward Cebrian and Ralph J. Cebrian, the then record owners of a parcel of real property which included the property and premises described in said cross-complaint, was leased to this defendant and cross-defendant and said lease was consented to by said The Hibernia Savings and Loan Society, the then holder of a mortgage upon said real property, and that the said consent of said bank to said lease was upon the condition that oil in paying quantities should be discovered upon said property within three years from said date, to-wit: Within three years from the 29th day of May, 1934, and that by an agreement in writing said bank subsequently extended the time of the operation of said lease to the 9th day of March, 1938, upon condition that oil in paying quantities should be discovered upon said property by said named date; that oil in paying quantities was not so discovered upon said property by said date and that in accordance with the written agreement of this defendant and cross-defendant and said The Hibernia Savings and Loan Society, this defendant and cross-defendant and his wife, Fay Burch, made, executed and delivered to said The Hibernia Savings and Loan Society a quit claim, quitclaiming and conveying to said The Hibernia Savings and Loan Society, all their right, title, interest, equity and estate in and to said land, which included the said property and premises described in the said cross-complaint of said cross-defendant D. G. Donahue, and that this cross-defendant has no right, title, interest, equity or estate in or to said real property or any part or parcel thereof under said lease dated the 29th day of May, 1934.''

fendants "has" any right, title, claim, or interest therein, or any part thereof. The judgment became final.

Plaintiff asserts the judgment in the suit to quiet title was a nullity because the relief granted was not identical with the prayer of the complaint. He argues the court had no jurisdiction to enter a judgment speaking as of the date of its entry; that its only jurisdiction was to enter a judgment in the identical language of the complaint, speaking as of the date of the filing of the complaint.

The rule that a default judgment in excess of the prayer of a complaint is void has no application to the Hibernia suit to quiet title. *Burtnett* v. *King*, 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333], states the reason for the rule (p. 808):

"The essence of the policy underlying section 580 of the Code of Civil Procedure, *supra*, is that in default cases, defendant must be given notice of what judgment may be taken against him—a policy underlying all precepts of jurisprudence and protected by our constitutions. If a judgment other than that which is demanded is taken against him, he has been deprived of his day in court—a right to a hearing on the matter adjudicated." *Hart* v. *Richardson*, 134 Cal. App.2d 242 [285 P.2d 685], is in point. A default judgment in a divorce case included a provision that certain property was the plaintiff's separate property. The defendant in the divorce action later sued the plaintiff in that action with respect to title to his property, arguing the property provision of the divorce judgment was void because there had been no prayer to declare the property to be separate property. The contention was rejected and the former judgment was held res judicata because a stipulation had been filed in the divorce action that the property was separate. The court held (p. 246):

"The situation was changed by the stipulation, and this plaintiff was not without notice of the form of judgment that might be expected. In effect, he consented to the judgment which was entered. He should be estopped from questioning the effect of his stipulation."

Burch had until March 9, 1938, in which to discover oil or gas. The judgment in the suit to quiet title was entered long after March 9, 1938. The fact that at the date of the judgment Burch had not discovered oil or gas in paying quantities by March 9, 1938, was not disputed. At the date of the judgment the record before the court affirmatively

showed Burch had no interest in Cuyama. Burch had notice of the judgment that would be taken against him. He was not misled into believing that no judgment decreeing his lease at an end would be entered. He affirmatively consented to the judgment that was entered.

The judgment in the Hibernia suit to quiet title speaks of the date of entry. ▮ Generally a judgment in a suit to quiet title takes effect on the rights and titles of the parties to the suit as they exist at the time of the rendition of the judgment and not as they existed at the commencement of the suit or before that time. (*Barstow San Antonio Oil Co.* v. *Whitney*, 205 Cal. 420, 421 [271 P. 477] ; 49 C.J.S. 876, § 446.)

▮ Plaintiff claims that as between Hibernia and himself the court could not look to the denials and allegations in his answer to Donahue's cross-complaint. The denials and allegations of the answer constituted admissions against interest which the court had the right to consider in rendering judgment. (19 Cal.Jur.2d 147, § 407. *Cf. Dolinar* v. *Pedone*, 63 Cal.App.2d 169, 176 [146 P.2d 237].)

Plaintiff contends the complaint states facts sufficient to constitute a cause of action in fraud. The fraud alleged is that Hibernia represented to plaintiff it had foreclosed its mortgage and that the May 29, 1937, termination date recited in its subordination of June 23, 1934, was in effect, and his interest in the petroleum would be lost if he did not locate oil in paying quantities within the time provided therein, when it knew at the time that the mortgage foreclosure was void because the order of the United States District Court had prohibited such foreclosure and because it had satisfied the debt secured by the mortgage.

The complaint also alleges that in order to obtain judgment in the suit to quiet title, Hibernia offered in evidence the foreclosure deed and the quitclaim deed of June 17, 1937, and that the court relied on them in entering judgment; and that Hibernia concealed from the court the United States District Court had prohibited execution of the foreclosure deed and the fact that it had obtained the quitclaim from plaintiff by means of the representations, promises, and acts alleged.

Plaintiff argues the composition destroyed Hibernia's lien; that it obtained title under a void foreclosure deed and in turn conveyed title on the void deed to the remaining defendants; that the use of the deed to his "detriment con-

432

stituted the lever by which [he] was defrauded.'' ·Defendants argue the fraud alleged was intrinsic, not extrinsic; that the complaint shows the foreclosure sale of 1935 was not enjoined by the United States District Court but, on the contrary, was ordered; that the injunctive part of the order confirming the composition was not to go into effect until after the composition had been consummated; in any event the alleged facts do not constitute fraud at all. Plaintiff replies that the facts constitute fraud and that it was extrinsic.

A court of equity under proper circumstances will set aside a judgment obtained by fraud. (29 Cal.Jur.2d 106, § 157.) The fraud must be extrinsic and collateral. (*Westphal* v. *Westphal*, 20 Cal.2d 393, 397 [126 P.2d 105]; *Huron College* v. *Yetter*, 78 Cal.App.2d 145, 149 [177 P.2d 367].) *Gale* v. *Witt*, 31 Cal.2d 362 [188 P.2d 755], defines extrinsic fraud (p. 365):

'' 'The fraud which will justify the setting aside of a final judgment by a court of equity must be of such character as prevents a trial of the issues presented to the court for determination. [Citations.] Where the fraud practiced is collateral to and outside of court so that a party is, because of such fraud or concealment, effectively deprived of presenting his case or all of his defense, it is extrinsic and equity will give relief. . . . [T]o constitute extrinsic fraud, there must have been some representation or concealment by the defendant which prevented the plaintiff from having his day in court. . . . These decisions follow the long established principle that the use of forged documents or perjured testimony constitutes intrinsic fraud and cannot be made the basis for an attack upon the judgment by way of relief in equity.''

The concealment by a party of evidence which, if disclosed, would tend to overthrow his case is not extrinsic fraud. *Hogan* v. *Hogan*, 131 Cal.App.2d 281 [280 P.2d 64], says (p. 284):

''It is settled in this state that a judgment will not be set aside because it is based upon perjured testimony or because material evidence is concealed or suppressed, that such fraud both as to the court and the party against whom judgment is rendered is not fraud extrinsic to the record for which relief may be had.''

Hibernia's alleged failure to introduce in evidence in the suit to quiet title the order of the United States

District Court, or to make any reference to it, does not constitute extrinsic fraud. The allegations as to what it did and did not do in that suit are in effect that the judgment was obtained by perjury, false evidence, and concealment of other evidence. The alleged concealment went to the merits of the cause submitted for judgment. If there was fraud it was intrinsic, not extrinsic. (See *In re Griffith,* 84 Cal. 107, 112-113 [23 P. 528, 24 P. 381]; *McLaughlin* v. *Security-First Nat. Bank,* 20 Cal.App.2d 602, 606 [67 P.2d 726].) ■ The rule is the same whether the judgment sought to be set aside is a default judgment or rendered after answer and contested trial. (*Horton* v. *Horton,* 18 Cal.2d 579, 585 [116 P.2d 605]; *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105]; *Harvey* v. *Griffiths,* 133 Cal.App. 17, 22-23 [23 P.2d 532].)

The representations alleged to have been made to plaintiff by Hibernia prior to the quiet title suit as to its legal position, identical with its claims in the suit, do not constitute extrinsic fraud. (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 22-23 [193 P.2d 728].) Such alleged representations were merely that Hibernia had a superior title. They were exactly the same representations made to the court in the suit to quiet title. ■ To be extrinsic the fraud must be collateral to the matter which was tried and determined by the court. (*Hanley* v. *Hanley,* 114 Cal. 690, 693 [46 P. 736]; *Carr* v. *Bank of America etc. Assn.,* 11 Cal.2d 366, 374 [79 P.2d 1096, 116 A.L.R. 1282]; *Abels* v. *Frey,* 126 Cal.App. 48, 54 [14 P.2d 594].) Two recent cases on all fours are conclusive.

*American Borax Co.* v. *Carmichael,* 123 Cal.App.2d 204 [266 P.2d 531], was a suit brought by American Borax Company and the Schorrs to set aside a judgment quieting title in Carmichael. It was claimed the judgment was obtained by extrinsic fraud in that Borax Company and the Schorrs had let judgment go by default on Carmichael's false representation that the Borax Company had no title at the time it had conveyed a lot to the Schorrs. Demurrer was sustained without leave to amend. Affirming, the court said (p. 206):

''The appellants contend that extrinsic fraud was alleged 'as to at least part of the plaintiffs'; that the complaint alleges that the attorneys for Carmichael represented to the Schorrs that the Borax Company had no title to Lot 207 (which the corporation had agreed to sell to them), and

because of such misrepresentation the Schorrs made no defense to the former action. . . .

"The complaint was clearly insufficient, as was the offer to amend which appellants say was made. Moreover, no claim is made in the brief that any specified facts exist, and could be alleged, which would disclose extrinsic fraud in that connection. Whether or not these appellants had any rightful interest in the property was the specific question involved in the action in which the judgment was rendered. The fact that this respondent was claiming title, in spite of certain outstanding instruments, presented a factual question but would not constitute extrinsic fraud."

"[P. 208.] With respect to the appellants Schorr it is argued that the complaint alleges that they were misled by a representation made to them by the attorney for the respondent to the effect that the Borax Company had no title to the lot which it had agreed to sell to them. It is stated in the respondent's brief that such a statement was made by respondent's attorney in a letter written to the Schorrs asking for a quitclaim deed from them, and that when they refused to give such a deed they were thereafter served with summons and complaint in the quiet title action. This is not denied in appellants' reply brief. Whether the Borax Company had any interest or title in the property was the issue involved in the former action, the Schorrs knew that this respondent was making a contrary contention, they had the right to defend when later served with summons, and no extrinsic fraud appears in this connection."

In *Thiriot* v. *Santa Clara etc. School Dist.*, 128 Cal.App.2d 548 [275 P.2d 833], the plaintiff sought to set aside a judgment in eminent domain whereby the defendant had acquired title from her. She alleged that in the condemnation suit the school district claimed the land was necessary for school purposes; the district and its officers falsely represented to her the land was needed for school purposes only, and induced her to compromise the suit and thereby avoid the trial of that issue; she believed the representations and consented to a decree of condemnation against her without trial of the issues presented by her answer; and if these issues had been tried she would have prevailed. The court held that obviously the alleged fraud pertained to one of the main issues in the condemnation suit and therefore was intrinsic. (Also see *Levinson* v. *Bank of America*, 126 Cal.

App.2d 122 [271 P.2d 632]; *Flint* v. *Hecker,* 143 Cal.App.2d 762 [300 P.2d 57].)

A party who has been given proper notice of an action and who has not been prevented from full participation, has had an opportunity to present his case to the court and protect himself from any fraud attempted by his adversary. Fraud perpetrated under such circumstances is intrinsic. Having had an opportunity to protect his interest, he cannot attack the judgment once the time has elapsed for an appeal or other direct attack. (*Howard* v. *Howard,* 27 Cal.2d 319, 321 [163 P.2d 439]; *Smith* v. *Smith,* 125 Cal.App.2d 154, 163 [270 P.2d 613].)

We conclude that the alleged fraud was intrinsic; that the judgment in the suit to quiet title is res judicata as to any claim plaintiff may have had to Cuyama and to prospect for oil or gas thereon, and that it is a bar to the present action. It is not necessary, therefore, to examine the validity of the foreclosure sale or whether the facts alleged constitute fraud.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied January 23, 1957. Carter, J., was of the opinion that the petition should be granted.