[No. B017015. Second Dist., Div. Five. Apr. 10, 1986.]

MERCURY CASUALTY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROY GARCIA, Real Party in Interest.

COUNSEL

Grace, Neumeyer & Otto and Richard A. Neumeyer for Petitioner.

No appearance for Respondent.

Hall, Espinosa & Norkin and Joseph E. Hall for Real Party in Interest.

OPINION

**ASHBY, J.**—The issue in this original proceeding is whether a plaintiff who prevails in a personal injury action but is unsatisfied with the damage award

may collaterally attack the judgment by filing a new action against an insurance company and a physician who testifies favorably to the defense, on the theory that the disappointing verdict resulted from the witness' allegedly false testimony. We hold that plaintiff has not stated a cause of action and the respondent court erred in overruling petitioner's demurrer to plaintiff's first amended complaint.

In 1978, plaintiff/real party in interest Roy Garcia became involved in an automobile accident with petitioner's insured, one Rose Rucker, and sued Ms. Rucker for damages resulting from his personal injuries. During the course of the litigation, the defense sought and was granted a court-ordered medical examination of plaintiff, pursuant to Code of Civil Procedure section 2032. Plaintiff was examined by Dr. Jerome Fuchs, a physician selected by the defense. Dr. Fuchs testified adversely to plaintiff at trial. Plaintiff won the battle but lost the war; the jury found that Ms. Rucker was liable to plaintiff, but awarded plaintiff damages of only $2,500 instead of the $100,000 he claims he should have received. Plaintiff attributes this relatively small award to the "perjured" testimony of Dr. Fuchs.[1]

In January 1984, plaintiff filed the within action against petitioner Mercury Casualty Company and Dr. Fuchs, alleging fraud, conspiracy and (against petitioner only) bad faith refusal to settle plaintiff's claim.[2] The fraud cause of action is based upon the allegation that Dr. Fuchs was represented to be an "independent medical examiner who would conduct a fair and impartial examination of the plaintiff," when in fact he was a "hireling of the insurance interests who always wrote negative reports concerning claimants for insurance benefits."[3] Petitioner's demurrer to the complaint was sustained and plaintiff was given leave to amend. Plaintiff then filed a much abbreviated first amended complaint on Judicial Council forms. Pe-

---

[1] Plaintiff's only evidence with respect to this charge of perjury is that Dr. Fuchs testified that plaintiff's injuries were not as severe as plaintiff claimed.

[2] In his memorandum of points and authorities in opposition to petitioner's demurrer, plaintiff indicated that the "bad faith" cause of action was based upon an alleged violation of Insurance Code section 790.03, subdivision (h), which prohibits "unfair claims settlement practices," including "Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue" (§ 790.03, subd. (h)(1)) and "Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." (§ 790.03, subd. (h)(5).) Although plaintiff, in his first amended complaint, was somewhat hampered by the strictures of the Judicial Council form pleadings, he alleged in his original complaint that petitioner failed to settle his case because it knew it could rely upon the "false" testimony of Dr. Fuchs to deny plaintiff his "rightful, civil rights."

[3] This characterization of Dr. Fuchs is somewhat more charitable than the one set forth in the declaration of plaintiff's counsel in opposition to petitioner's demurrer, wherein Dr. Fuchs is referred to as having "a notorious reputation as being an insurance hatchet man and who has a dubious reputation for short changing cripples in pursuit of the insurance services."

titioner once again demurred. The respondent court (a different judge) over-ruled the demurrer, finding that the first cause of action (fraud) was "within the reach of the second count of *Agnew* v. *Parks* (1959) 172 Cal.App.2d 756 [343 P.2d 118] at 765 only." We hold that *Agnew* is inapposite here.

The plaintiff in *Agnew* filed a medical malpractice case against one Dr. Larson, and sought to have the court appoint a "disinterested medical wit-ness" to examine her and testify as an expert. The court was referred by the Los Angeles County Medical Association to Dr. Parks, who represented both to the court and to Mrs. Agnew (who was bearing the expense of the examination) that he was not acquainted with the defendant, Dr. Larson. In fact, Dr. Parks did know Dr. Larson and testified favorably to Dr. Larson at trial. When a judgment of nonsuit was reversed on appeal, Dr. Parks appeared at the second trial to testify as an expert witness on behalf of Dr. Larson.

Mrs. Agnew then sued Dr. Parks and others for "Conspiracy to Obstruct the Orderly Prosecution of a Civil Action and for Concerted Refusal to Deal." Although the Court of Appeal threw out virtually all of plaintiff's case on statute of limitations and other grounds, it held that Mrs. Agnew had stated a cause of action for conspiracy based upon fraud in the "creation of a plan to misrepresent Parks to the plaintiff as an unprejudiced witness for the purpose of damaging her." (172 Cal.App.2d at p. 769.)

■ The difference between *Agnew* and this case is that Dr. Fuchs was never meant to be an unprejudiced witness. In *Agnew,* Dr. Parks was se-lected as a "disinterested medical witness" pursuant to Code of Civil Pro-cedure section 1871, the predecessor of Evidence Code sections 730-733. Section 730 provides for the appointment of expert witnesses "on the court's own motion or on the motion of any party." The court may appoint a disinterested expert who serves the purpose of providing the court with an impartial report. (*Durst* v. *Superior Court* (1963) 222 Cal.App.2d 447, 451 [35 Cal.Rptr. 143, 7 A.L.R.3d 874].) In *Agnew,* the alleged fraud consisted of the fact that Dr. Parks represented himself as an impartial expert when in fact he was not.

■ In this case, Dr. Fuchs was appointed to examine plaintiff pursuant to Code of Civil Procedure section 2032. In *Durst* v. *Superior Court, supra,* the court pointed out the difference between medical examinations conduct-ed under former Code of Civil Procedure section 1871 and those conducted under Code of Civil Procedure section 2032: "The difference between sec-tion 1871 and section 2032 of the Code of Civil Procedure should be kept clearly in mind. Under section 2032 one of the parties may request the court to order a person to submit to examination. This examination may be con-

ducted by the physician for the party requesting the examination, and in a sense might be considered an adversary proceeding. In contrast, under section 1871 the examination is made on the court's own motion and it may appoint an independent and disinterested expert who serves the purpose of providing the court with an impartial report." (222 Cal.App.2d at p. 451.)

■ "As early as 1907, the Supreme Court of California recognized the inherent power of the trial court to order a plaintiff in a personal injury case to submit to a physical examination by defendant's physician. . . . In particular, the defendant in a personal injury action had a legal right to a reasonable physical examination of the plaintiff; to allow the plaintiff to present expert evidence with respect to the extent of his physical injuries, but to deny the defendant the same right by withholding a physical examination by the defendant's physician, would amount to a denial of justice." (Grossman & Van Alstyne, Cal. Discovery Practice, § 741, citing *Johnston v. Southern Pacific Co.* (1907) 150 Cal. 535 [89 P. 348].)

■ Thus, unlike expert witnesses appointed under Evidence Code section 730, the physician appointed to conduct a medical examination under Code of Civil Procedure section 2032 is not hired for the purpose of being impartial. The medical examination provided for in section 2032 is a discovery tool, just as depositions (§ 2016 et seq.) interrogatories (§ 2030), requests for inspection and production of documents (§ 2031) and requests for admissions (§ 2033) are discovery tools. Although the court may appoint any physician it chooses to conduct the examination, as a practical matter the court will almost always appoint the physician requested by the moving party. (*Edwards* v. *Superior Court* (1976) 16 Cal.3d 905 [130 Cal.Rptr. 14, 549 P.2d 846].) Such examinations provide a means for the defense to have a medical expert of its choice evaluate the plaintiff's claims and be prepared to testify if the case goes to trial. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, § 8.891.) Without this discovery tool, the defense would be completely at the mercy of "such witnesses as the plaintiff sees fit to call." (*Johnston* v. *Southern Pacific Co., supra,* 150 Cal. 535, 542.)

■ In this context, plaintiff's claim that he was "defrauded" by petitioner and Dr. Fuchs cannot hold water. Plaintiff's counsel admitted that the reputation of Dr. Fuchs as "defense-minded" is widespread if not notorious. The fact that Dr. Fuchs was referred to in his report as an "independent medical examiner" is not an indication of his lack of bias, but only of the fact that his opinion is "independent" of the plaintiff's case. At the most, plaintiff's allegations indicate a naivete about discovery procedures in personal injury actions. Under the facts of this case, such allegations cannot give rise to a cause of action for fraud.

■ Plaintiff had several means of protecting his interests in his personal injury case. He could have protested the selection of Dr. Fuchs. If the court did not yield to his objection (see *Edwards* v. *Superior Court, supra,* 16 Cal.3d at p. 913), plaintiff could have had his attorney present during the examination (*Munoz* v. *Superior Court* (1972) 26 Cal.App.3d 643 [102 Cal.Rptr. 686]).[4]

The plaintiff's most powerful weapon is, of course, cross-examination of the defendant's physician at trial. This is especially true where, as here, the plaintiff believes that the physician is a "hireling of the insurance interests."

"It is suggested that certain doctors testify only for the defense in matters of personal injury, and that that in itself suggests bias and prejudice and demands disqualification of such a doctor to make examinations and testify. We do not agree. *Such matters are relevant only as to weight and credibility, and cross-examination upon this subject affords full protection to the plaintiff's rights.*" (*Timpte* v. *District Court In and For the City and County of Denver* (1966) 161 Colo. 309 [421 P.2d 728, 729], italics added.)

■ When plaintiff received a damage award which he felt was excessively low, he could have brought a motion for new trial (Code Civ. Proc., § 657, subd. 5) or a motion for an additur (Code Civ. Proc., § 662.5).[5]

■ ■ Plaintiff does not appear to have availed himself of any of these opportunities, but instead has chosen to collaterally attack the judgment in a new action alleging what amounts to intrinsic fraud. Such a claim would not be actionable if plaintiff were attempting to set aside the verdict on such a ground: "If the aggrieved party had a reasonable opportunity to appear and litigate his claim or defense, fraud occurring in the course of the proceeding is not a ground for equitable relief. The theory is that these matters will ordinarily be exposed during the trial by diligence of the party and his counsel, and that the occasional unfortunate results of undiscovered perjury or other intrinsic fraud must be endured in the interest of stability of final

---

[4]In contrast, an examinee has no such right where the examination is conducted pursuant to Evidence Code section 730; the examinee "does not require protection and suffers no prejudice since the physician is appointed by the court as an impartial expert. He suffers no detriment by the exclusion of . . . his attorney . . . because the examining physician is not in the position of an adversary." (*Durst* v. *Superior Court, supra,* 222 Cal.App.2d 447, 452.)

[5]Section 662.5 provides in pertinent part: "In any civil action where after trial by jury an order granting a new trial limited to the issue of damages would be proper, the trial court may in its discretion: (a) If the ground for granting a new trial is inadequate damages, make its order granting the new trial subject to the condition that the motion for a new trial is denied if the party against whom the verdict has been rendered consents to an addition of so much thereto as the court in its independent judgment determines from the evidence to be fair and reasonable."

judgments." (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in the Trial Court, § 221, p. 625.) The reason for this rule is that litigation must at some point come to an end. Just as plaintiff could not obtain equitable relief from the judgment on grounds of intrinsic fraud, he may not attack the judgment in another manner by filing a new action seeking damages based upon unsubstantiated claims of fraud and perjury.

 Plaintiff's claim for statutory violations of the Insurance Code must also fail, since the allegations of the complaint do not state a claim based upon "unfair claims settlement practices." In order to state a cause of action for "bad faith refusal to settle" (Ins. Code, § 790.03, subd. (h)) plaintiff must plead facts to show that (1) the insurance company had facts to demonstrate that the liability of its insured had become reasonably clear, (2) knowing of these facts, the insurance company did not act in good faith to effectuate a prompt, fair and equitable settlement with the claimant, and (3) there has been a settlement or a final determination that the insured is liable to the claimant. (*Jackson* v. *State Farm Mutual Auto. Ins. Co.* (1983) 148 Cal.App.3d 1179, 1185 [196 Cal.Rptr. 474].)

The key word here is "facts," something in which plaintiff's first amended complaint is sorely lacking. Plaintiff merely parrots the words of the statute, alleging that petitioner "failed and refused to attempt in good faith to effectuate a prompt, fair and equitable settlement of plaintiff's claim although the liability of [its] insured had become reasonably clear. . . ." Without a more specific statement of facts, the complaint must fail for uncertainty.

It is obvious, however, that permitting plaintiff to amend the complaint would serve no useful purpose, given the fact that the actions of petitioner, as set forth in plaintiff's original complaint,[6] cannot give rise to a cause of action.

While the allegations of the original complaint border on the unintelligible, they boil down to the fact that petitioner refused to settle its claim because it had the "false" report prepared by Dr. Fuchs and knew it could use the testimony of Dr. Fuchs to defeat plaintiff's claim that he sustained injuries entitling him to $100,000 in damages. In reality, plaintiff has not stated a bad faith claim but has merely attempted to find another angle to his fraud cause of action. All plaintiff has alleged is that petitioner declined to settle the case because it thought it could prevail at trial. As a practical

---

[6]Despite plaintiff's attempt to plead more generally in the first amended complaint, he cannot ignore allegations in the original complaint which defeat his claim. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1117, p. 533, and cases cited therein.)

matter, that is what happened; although the jury determined that petitioner's insured was at fault, it refused to award plaintiff the $100,000 in damages to which he claimed he was entitled. Even if the liability of petitioner's insured had become reasonably clear prior to trial, the issue of damages certainly was not. (*Beckham* v. *Safeco Ins. Co. of North America* (9th Cir. 1982) 691 F.2d 898.)

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of September 13, 1985, overruling the demurrer of defendant Mercury Casualty Company to plaintiff's first amended complaint, and enter a new and different order sustaining the demurrer without leave to amend, in that matter entitled Roy Garcia v. Mercury Casualty Insurance Co., Los Angeles Superior Court No. C-483452.

Feinerman, P. J., and Eagleson, J., concurred.

A petition for a rehearing was denied May 5, 1986, and petitioner's application for review by the Supreme Court was denied June 26, 1986.