RSC THE QUALITY MEASUREMENT
COMPANY, Plaintiff,

v.

IPSOS–ASI, INC., et al., Defendants.

No. C–1–99–205.

United States District Court,
S.D. Ohio,
Western Division.

Feb. 7, 2002.

Barbara Bison Jacobson, Sean Lincoln Rhiney, Michael G. Pedley, Bison Jacobson Law Office, Cincinnati, OH, William E. Statham, Statham & McCray, Evansville, IN, for Plaintiff.

James Eugene Burke, Keating Muething & Klekamp–1, Cincinnati, OH, Martin T. Tully, Katheryn, K. Frierson, Kirkland & Ellis, Chicago, IL, for Defendants.

## ORDER

BECKWITH, District Judge.

This matter is before the Court on a number of outstanding motions including:

Defendants' Motion to Transfer Case to the Southern District of Indiana (Doc. No. 46), Motions for Order Staying Proceedings Pending Resolution of Motion for Summary Judgment (Doc. No. 51 & 53), Motion for Summary Judgment (Doc. No. 52), and Motion for Protective Order (Doc. No. 54); and Plaintiff's Motion for Order Holding Defendants' Summary Judgment Order in Abeyance (Doc. No. 55), Motion to Vacate Calendar Order (Doc. No. 61), Motion to Compel Responses to Interrogatories and Requests for Documents (Doc. No. 67), Motion for Leave to Serve More than Twenty–Five Interrogatories on Each Defendant (Doc. No. 68), and Motion to Vacate Deadline for Expert Reports (Doc. No. 72). This case now has a complex and rather confusing procedural history. Remarkably, the currently pending motions are interrelated to one degree or another. The key to resolving these motions, therefore, is to find the one issue which unties the knot. The Court believes that it has done so. First, however, the Court recounts the background leading up to the present motions.

I. *Background and Procedural History*

The Plaintiff in this case is rsc The Quality Measurement Company. Plaintiff is an Indiana corporation based in Evansville, Indiana. The Defendants in this case are IPSOS S.A., IPSOS Insight Marketing, and IPSOS–ASI. IPSOS S.A. and IPSOS Insight Marketing are French corporations based in France. IPSOS–ASI is a Delaware corporation with an office in Cincinnati. IPSOS S.A. is the parent corporation of IPSOS Insight Marketing and IPSOS–ASI. Each party is in the business of advertising and market research and each has developed technology to gauge consumer reaction to television commercials. Plaintiff's technology is called ARS Persuasion. Defendants' technology is called PRE\*VISION.

In 1991 and 1992, Plaintiff, IPSOS S.A. and IPSOS Insight Marketing entered into negotiations regarding a possible joint venture. After signing confidentiality agreements, the parties exchanged information regarding their television advertising research methods. The parties could not reach an agreement though and a joint venture was never undertaken. Plaintiff came to believe, however, that the joint venture negotiations were just a ploy by the IPSOS group to gain access to Plaintiff's trade secrets and proprietary information.

In 1996, Plaintiff filed a lawsuit against IPSOS S.A., IPSOS Insight Marketing, and two other IPSOS subsidiaries in the United States District for the Southern District of Indiana, Evansville Division. The complaint alleged six causes of action. Count I asserted a claim for breach of the confidentiality agreements. Count II stated a claim under Indiana law for misappropriation of trade secrets. Count III sought a declaratory judgment under Indiana law that the Defendants were not entitled to use and were prohibited from disclosing Plaintiff's trade secrets and proprietary information. Count IV asserted a claim under Indiana law for constructive fraud. Count V asserted a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a). This count was specifically related to a contention that Defendants incorporated Plaintiff's ARS Persuasion into PRE\*VISION. Finally, Count VI asserted a claim for misappropriation of trade secrets under the Lanham Act, 15 U.S.C. § 1126.

In the meantime, in 1998, IPSOS S.A. purchased a Cincinnati-based firm called ASI Marketing Research. ASI Marketing Research was also involved in television and marketing research. IPSOS S.A. renamed the company IPSOS–ASI. Plaintiff says that during settlement negotiations in

the Indiana matter, the IPSOS defendants represented that they had no intention of introducing any product using ARS Persuasion technology in the United States. Despite that statement, however, Plaintiff claims that Defendants used IPSOS–ASI to introduce in America a product called Next*TV. Plaintiff contends that Next*TV is merely a revised version of PRE*VISION which incorporates ARS Persuasion technology.

To add insult to injury, Plaintiff claims that during the pendency of the Indiana case, Defendants began conducting secret meetings with Karl Rosenberg, an executive vice president of rsc. Plaintiff claims that the purpose of these clandestine meetings was twofold: first, to pirate further its trade secrets and proprietary information, and, second, to hire Rosenberg away in order to subvert its case in Indiana. IPSOS did eventually hire Rosenberg to run IPSOS–ASI. However, according to Plaintiff, Defendants gave Rosenberg a large signing bonus, but little or no responsibilities, and in fact stashed Rosenberg in Hong Kong in order to make him unavailable for the Indiana trial

On March 19, 1999, Plaintiff filed a six-count complaint against Defendants in this Court under common law and the federal RICO statutes. Count I alleged that Defendants used income derived from a pattern of racketeering activity consisting of mail fraud and wire fraud and invested said income in an enterprise, IPSOS–ASI, which is engaged in or whose activities affect interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a). Count II alleged that Defendants were associated with an enterprise whose affairs affected interstate or foreign commerce and conducted the affairs of such enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Counts III and IV alleged that Defendants conspired to violate 18 U.S.C. §§ 1962(a) &

(c), in violation of 18 U.S.C. § 1962(d). Count V set forth a claim for actual fraud based on Defendants alleged misrepresentations that they had no intention of offering the revised version of PRE*VISION for sale in the United States. Count VI set forth a claim for constructive fraud based on the same alleged misrepresentations. Finally, Count VII set forth a claim for tortious interference with a business relationship based on Defendants' hiring of Karl Rosenberg.

Soon thereafter, Defendants filed a number of procedural motions. First, Defendants moved to transfer this case to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Alternatively, Defendants moved to dismiss the case on the grounds of forum non conveniens. Defendants also moved to dismiss Plaintiffs' claims for lack of jurisdiction over the person and for failure to state claims upon which relief could be granted. Specifically, with respect to the latter motion, Defendants alleged a number of pleading defects in Plaintiff's RICO claims. Plaintiff then filed a First Amended Complaint in response to Defendants' contention that its RICO claims were inadequately pled.

On February 10, 2000, the Court issued an order (Doc. No. 36) denying Defendants' motions. In the order, the Court first found that Plaintiff had sufficiently pled its RICO claims. The Court then found that it would be inappropriate to dismiss Plaintiff's claims under the doctrine of forum non conveniens because that doctrine applies only when the alternative forum is a state court or a court of a foreign country. In this case, however, the alternative forum was another federal court. The Court next found that the RICO statutes provided an appropriate basis upon which to assert personal jurisdiction over the Defendants, and, therefore,

declined to dismiss Plaintiff's claims on jurisdictional grounds. Finally, the Court found that the Southern District of Indiana was not a more convenient forum than this one to adjudicate Plaintiff's claims. In so doing, the Court noted that judicial economy would not be preserved because the parties admitted that it was unlikely that this case would be consolidated with the Indiana case already pending. Therefore, the parties would have to prepare for and attend two trials regardless of transfer. The Court also noted that Plaintiff believed the important witnesses were located in Cincinnati and that it was no more inconvenient for witnesses to travel to Cincinnati for a second trial than it would be to travel to Evansville a second time. Lastly, the Court rejected Defendants' suggestion that transferring the case to Indiana was appropriate because that Court was in a better position to rule on res judicata issues arising from that trial.

Meanwhile, back in Indiana, the district judge ruled that Plaintiff's claims under the Indiana Trade Secrets Act were barred by the statute of limitations. The remaining claims were tried to a jury in April 2000. The end result of that trial was a verdict in favor of Defendants on all counts. In rendering its verdict, the jury answered as follows to these pertinent special interrogatories:

1. Do you find that rsc disclosed any information regarding ARS Persuasion to IPSOS S.A. and/or IPSOS Publicite, today known as IPSOS Insight Marketing, (please circle which) that was not generally known or readily ascertainable by proper means?

 Yes ✓ No

 . . . . .

3. Do you find that IPSOS S.A. and/or IPSOS Publicité (please circle which) had access to rsc's informa-

tion about ARS Persuasion that was confidential, proprietary and trade secret?

 Yes ✓ No

4. Do you find that IPSOS S.A. and/or IPSOS Publicité independently developed PRE*VISION?

 ✓ Yes No

5. Although not required to, do you find that IPSOS S.A. and/or IPSOS Publicité have shown that they did not use rsc's trade secrets in revising PRE*VISION?

 ✓ Yes No

 . . . . .

False Advertising/Lanham Act

8. Do you find that IPSOS S.A. and/or IPSOS Publicité (please circle which) ever offered PRE*VISION for sale in the United States?

 Yes ✓ No

*See* Doc. No. 52, Ex. L. The trial court later denied Plaintiff's motion for a new trial.

Following the conclusion of the Indiana trial, Plaintiff, with leave of the Court, filed a Second Amended Complaint (Doc. No. 45) which added two more causes of action. The eighth cause of action in the Second Amended Complaint asserts a claim for intentional interference with civil litigation and/or spoliation of evidence. This cause of action posits that Plaintiff lost the Indiana trial as a result of Defendants' hiring of Karl Rosenberg. Plaintiff alleges that Rosenberg was an important witness in its case against Defendants and that Defendants hired Rosenberg away for the sole purpose of disrupting Plaintiff's ability to present its case. The ninth cause of action in the Second Amended

Complaint asserts a claim against Defendants under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, for predatory hiring. Specifically, this cause of action alleges that Defendants hired Rosenberg so that Plaintiff would lose the Indiana case, and as a result, permit Defendants to attempt to monopolize the market.

After Plaintiff filed its Second Amended Complaint, Defendants renewed their motion to transfer this case to the Southern District of Indiana. *See* Doc. No. 46. In this motion, they argue that transferring this case to Indiana is appropriate because the district judge, having sat through a trial on similar issues, is in the best position to prevent inconsistent outcomes and duplicative trials and rule on preclusion issues. Defendants also say that Plaintiff's new causes of action are nothing more than collateral attacks upon the jury's verdicts and that those claims are best resolved by the judge who presided over that case. Finally, Defendants contend transfer is appropriate because more of the important witnesses are located within the subpoena power of the Indiana court and that district is where most of the evidence is located. Plaintiff opposes transferring this case to the Southern District of Indiana, reminding that this Court already stated in the earlier order that it is fully capable of resolving preclusion issues. Furthermore, Plaintiff believes that transferring this case would be inappropriate because the important witnesses are located in Cincinnati, not Evansville.

Defendants then filed a motion to stay all proceedings in this case pending resolution of their motion for summary judgment (Doc. No. 51), which, it should be noted, was not pending at the time. The basis for the motion was, however, that Plaintiff's claims in this case are now barred by issue and claim preclusion and that proceeding with discovery and other matters prior to a resolution of the preclusion issues would be a waste of everyone's resources. Defendants then did file a motion for summary judgment (Doc. No. 52) on all of Plaintiff's claims on res judicata grounds. In addition, Defendants filed yet another motion to stay the proceedings pending resolution of their summary judgment motion. *See* Doc. No. 53. Defendants then filed a motion for a protective order (Doc. No. 54) which, if granted, would not require them to respond to Plaintiff's pending discovery requests until thirty days after the Court ruled on their summary judgment motion.

In response to these motions, Plaintiff filed its own battery of pleadings. First, Plaintiff filed a motion to hold Defendants' motion for summary judgment in abeyance until an opportunity to conduct further discovery could be had. *See* Doc. No. 55. Plaintiff then filed a memorandum in opposition to Defendants' summary judgment motion. *See* Doc. No. 56. In its brief Plaintiff argues that its antitrust and spoliation claims are not barred by res judicata because those claims arise out of different circumstances and transactions than those litigated in the Indiana trial. Furthermore, Plaintiff contends, there was no decision on the merits in the Indiana trial because Defendants' alleged improper actions vis à vis Karl Rosenberg denied it an opportunity to fully and fairly litigate its claims against Defendants. Finally, Plaintiff again reminds the Court that it should not rule on Defendants' summary judgment motion until a full and fair opportunity to conduct discovery has been had. In related pleadings, Plaintiff filed motions to vacate the current calendar order and to vacate the deadline for filing experts' reports. *See* Doc. Nos. 61 & 72. Both of these motions are essentially predicated on the current procedural posture of the case and Plaintiff's inability to obtain discovery from Defendants. Plaintiff also filed a motion to compel Defendants to answer to

interrogatories and to respond to its requests for documents (Doc. No. 67) and a motion for leave to serve more than twenty-five interrogatories (Doc. No. 68). Defendants' responses to Plaintiff's discovery-based arguments and motions have set forth two basic arguments: One, that their res judicata-based motions present questions of law which require no discovery; and two, proceeding with discovery while their res judicata motions are pending would be wasteful.

That was a relatively exhaustive description of the procedural history of this case and from it only one thing emerges with clarity—nobody beats lawyers at creating a good paradox. Defendants say that Plaintiff's claims are barred by res judicata, therefore, summary judgment is appropriate. Plaintiff says that it cannot respond to Defendants' summary judgment motion until it has had an opportunity to conduct discovery. Defendants counter that discovery is not needed because res judicata is a question of law. Plaintiff says that res judicata does not apply because the Karl Rosenberg spoliation issues prevented a full and fair hearing in the Indiana trial, but, of course, it needs discovery on those issues. Then Plaintiff wants to amend the calendar order because of discovery which Defendants will not supply because they contend it is not necessary at this point. Where does one begin?

## II. *Analysis*

A good starting point seems to be the lightning rod, Karl Rosenberg. The Court agrees with Defendants that Plaintiff's argument that the taint of Karl Rosenberg prevented it from getting a full and fair hearing in Indiana is a tacit admission that claim and/or issue preclusion bars most if not all of Plaintiff's claims if somehow the spoliation and antitrust issues were absent from this case. If these issues were absent, then the res judicata picture would

clear up and then, possibly, the answers to the rest of the motions. Accordingly, the Court now turns to a discussion of spoliation of evidence and predatory hiring under the Sherman Antitrust Act.

### A. *Spoliation of Evidence and Predatory Hiring*

As described above, Plaintiff alleges that Defendants hired Karl Rosenberg for the purpose of subverting its Indiana case. Plaintiff claims that Rosenberg would have been an important witness for it and against Defendants and that Defendant's hiring of Rosenberg tainted his evidentiary value and, ultimately, caused it to lose the Indiana case. Plaintiff's predatory hiring claim makes essentially the same allegations but with the added feature that Defendants were attempting to monopolize the market by hiring Rosenberg.

 Both Indiana and Ohio recognize intentional interference with civil litigation and/or spoliation of evidence as a separate cause of action sounding in tort. *See Levinson v. Citizens Nat'l Bank of Evansville,* 644 N.E.2d 1264, 1268 (Ind.Ct.App.1994); *Smith v. Howard Johnson Co., Inc.,* 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1994). In order to state a claim for spoliation of evidence in Indiana, the plaintiff must demonstrate: 1) a relationship between the parties which creates a duty to refrain from destroying evidence; and 2) foreseeability that the destroyed evidence would become the focus of subsequent litigation. *Burton v. Estate of Davis,* 730 N.E.2d 800, 805–06 (Ind.Ct.App.), *opinion vacated upon settlement,* 740 N.E.2d 850 (Ind.2000). In Ohio, the elements are similar, but stated more concretely: 1) pending or probable litigation involving the plaintiff; 2) knowledge on the part of the defendant that litigation exists or is probable; 3) willful destruction of evidence; 4) disruption of the plaintiff's case; and 5)

damages proximately caused by the defendant's acts. *Smith*, 615 N.E.2d at 1038.

▮ Defendants argue that despite these courts' recognition of a cause of action for spoliation of evidence, such a claim will not lie and/or is barred by claim preclusion where the plaintiff is aware of the spoliation prior to or during the alleged disrupted trial and fails to raise the issue. Ohio courts of appeal have refused to allow claims for spoliation where the plaintiff was aware of the spoliation prior to trial, *Williamson v. Rodenberg*, No. 96APE10–1395, 1997 WL 360840, at *4 (Ohio App. June 30, 1997), or allowed such a claim because the plaintiff did not learn evidence had been destroyed until final judgment had been entered in the first case. *Davis v. Wal–Mart Stores, Inc.*, No. 75224, 2000 WL 504114, at *4 (Ohio App. Apr. 27, 2000). Indiana courts do not appear to have addressed this issue. The state of California, however, does not allow a tort remedy based on spoliation of evidence where the victim of spoliation knew or should have known of the alleged spoliation before trial or other decision on the merits of the underlying action. *See Cedars–Sinai Medical Center v. Superior Court*, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511, 521 (1998). The Court in *Cedars–Sinai* observed that when the victim learns of the spoliation prior to trial there are other remedies available to protect that party, including giving an adverse inference instruction to the jury and/or imposing discovery sanctions. *See id.* This Court notes that both federal law and the law of the state of Indiana recognize that an adverse inference instruction may be warranted where evidence has been altered or destroyed. *See Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir.1983); *Cahoon v. Cummings*, 734 N.E.2d 535, 544–45 (Ind.2000). Furthermore, where the destruction of evidence has been willful or intentional, or even caused by gross negligence, the trial court

may without abusing its discretion enter a default judgment against the party responsible for the spoliation. *See Marrocco v. General Motors Corp.*, 966 F.2d 220, 223–25 (7th Cir.1992).

▮ In this case, it is undisputed that Plaintiff learned that IPSOS lured Rosenberg away prior to the beginning of the trial in Indiana. Indeed, the appearance of Rosenberg and his possible taint of the then-pending trial was one of the reasons Plaintiff originally opposed transferring this case to the Southern District of Indiana. We also know from the timing of the filing of the complaint in this case that Plaintiff was aware of Rosenberg's alleged clandestine meetings with IPSOS prior to the commencement of the Indiana trial. The Court further observes that in the Indiana case Plaintiff filed a motion-in-limine to exclude Rosenberg from testifying on behalf of the Defendants. *See* Doc. No. 52, Ex. G. Because it is clear beyond all doubt that Plaintiff was aware that Defendants had possibly destroyed the potential evidentiary value of Karl Rosenberg prior to the start of trial in Indiana, Plaintiff could have and should have sought the appropriate relief at that time, thereby perhaps alleviating or removing the alleged taint before it caused any harm. Accordingly, the Court concludes that Plaintiff may not maintain a separate cause of action for spoliation of evidence in this case based on Rosenberg's hiring.

▮ The same holds true for Plaintiff's claim for predatory hiring. Although styled as a Sherman Act claim, Plaintiff's ninth cause of action is really a spoliation claim dressed in antitrust clothing. Most of the allegations in that claim complain about how Defendants caused Plaintiff to lose the Indiana case by hiring Karl Rosenberg, with just enough other allegations of attempted monopolization to give the claim the superficial appearance of an

antitrust action. In any event, even if the Court were to conclude that Plaintiff's ninth cause of action is really an antitrust claim, and not a spoliation claim in disguise, Plaintiff still fails to state a claim for relief here. Although the Sherman Act does recognize a claim for attempted monopolization through predatory hiring practices, the hiring of one employee is insufficient as a matter of law to establish predatory conduct. *See American Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Pub., Inc.,* 108 F.3d 1147, 1153 (9th Cir.1997). Rather, the plaintiff must allege that the defendant has engaged in a continued pattern of compromising the plaintiff's employees in order to state a claim for predatory hiring. *Id.* In this case, Plaintiff alleges only that Defendants hired Karl Rosenberg and not that Defendants have engaged in a continuous pattern of hiring its employees. Accordingly, Plaintiff has failed to state a Sherman Act violation for predatory hiring.

However, just because the Court has found that Plaintiff may not assert spoliation of evidence claims in this case, it does not mean that Plaintiff is incorrect that res judicata is inapplicable in this case because Defendants' alleged destruction of evidence prevented it from receiving a full and fair hearing in the earlier trial.

### B. *Did Plaintiff Receive a Fair Hearing in Indiana?*

As the Court has indicated, Plaintiff apparently concedes that most if not all if its claims in this case would be barred by claim or issue preclusion absent its contention that those doctrines are not applicable because Defendants' alleged misconduct prevented it from receiving a full and fair hearing on the issues.

■ Federal principles of res judicata are applicable to determine the scope and effect to give to an earlier judgment of a federal court. *See J.Z.G. Resources, Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 213–14 (6th Cir.1996); *Silcox v. United Trucking Serv., Inc.,* 687 F.2d 848, 852 (6th Cir. 1982). The concept of res judicata is comprised of the doctrines of claim preclusion and issue preclusion. The rule of claim preclusion is that a valid and final judgment on a claim precludes not only a second action based on that claim or any part of that claim, but also prevents a party from re-litigating issues that could have been raised in the earlier action. *J.Z.G. Resources, Inc.,* 84 F.3d at 214. Claim preclusion will apply when: 1) a court of competent jurisdiction has entered a final decision on the merits; 2) there is a subsequent suit between the same parties or their privies; 3) there is an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and 4) an identity of the causes of action. *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 880 (6th Cir. 1997).

■ The rule of issue preclusion provides that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir.1994). Issue preclusion applies when: 1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation; 2) the issue was actually litigated and decided in the prior action; 3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation; 4) the party to be estopped was a party to the prior litigation (or in privity with such a party); and 5) the party to be estopped had a full and fair opportunity to litigate the issue. *Hammer v. Immigration & Naturalization Serv.,* 195 F.3d 836, 840 (6th Cir.1999). The Court finds that it need not decide wheth-

er res judicata is inapplicable where a party claims that a party's misconduct prevented it from receiving a full and fair hearing because, in this case, the issue of whether Plaintiff received a fair trial in Indiana is itself subject to preclusion principles.

■ As the Court pointed out in Part II.A, above, Plaintiff was well aware that Defendants' hiring of Karl Rosenberg had a potentially subversive effect on its claims prior to the beginning of the Indiana trial. Although the Court has not been provided with all of the pleadings filed in that case, we do know that Plaintiff filed a motion-in-limine in which it tried to prevent Defendants from calling Rosenberg as a witness. *See* Doc. No. 52, Exs. G & H. In that motion, Plaintiff argued extensively that IPSOS had intentionally destroyed Rosenberg's evidentiary value by recruiting him away from rsc. Plaintiff further argued that allowing Rosenberg to testify in that trial would be unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. According to Defendants, however, and this point does not appear to be disputed, the district judge denied Plaintiff's motion-in-limine, finding no factual or legal basis for precluding Rosenberg from testifying. *See* Doc. No. 52, at 11. Following the jury's verdict in that case, Plaintiff moved for a new on trial on the grounds, among others, that there were errors of law in admitting and excluding critical evidence [1] and that the trial was overall unfair and prejudicial to Plaintiff. Again, the trial judge denied Plaintiff's motion, finding that the trial was conducted in a fair manner and that any evidentiary errors were insufficient to warrant a new trial. *See* Doc. No. 52 Ex. M, at 1–2. In fact, the trial judge gave Plaintiff's motion rather short shrift, indicating that it was simply a rehash of issues raised and rejected prior to trial. *See id.* at 2. Finally, following the rejection of its motion for a new trial, Plaintiff filed a motion for sanctions pursuant to the court's inherent powers. In this motion, Plaintiff alleged wide-ranging discovery and other abuses on the part of the Defendants and argued specifically that, "[T]he IPSOS defendants have employed tactics calculated to delay the case and discovery, to restrict rsc's ability to prepare for trial, and to deny rsc a full and fair trial on the merits of this case." *See* Doc. No. 52, Ex. S, at 1. In addition, Plaintiff again raised the specter of Karl Rosenberg, stating: "IPSOS entered into settlement negotiations with rsc in September 1998, only to undermine the settlement process by secretly recruiting and hiring Karl Rosenberg, an rsc executive and rsc witness." *See id.* at 2. The trial judge again rejected Plaintiff's contentions regarding the fairness of the trial. *See* Doc. No. 52, Ex. T.

Plaintiff's present arguments represent at least the fourth time Plaintiff has attempted to challenge the fairness of the Indiana proceedings. Plaintiff raised the issue at least three times during the pendency of the Indiana trial. Much, if not all, of the argument has revolved around the effect Karl Rosenberg would have or did have on the trial. The trial judge, having presided over that case, and having been fully apprised of Defendants' alleged wrongdoing, still found each time that the trial was conducted in a fair manner. The Court can do no more than conclude that the issue of the fairness of that trial has been fully and fairly litigated. The Seventh Circuit Court of Appeals may or may not reach a different conclusion. This

---

1. Although the Court has not been provided with a copy of this motion, because Karl Rosenberg has been a central figure in both of these cases, it is both fair and reasonable to assume that some of the alleged evidentiary errors committed by the trial judge revolved around Rosenberg.

Court, however, must respect the district judge's findings and conclusions in that regard.

The Court also observes that, as indicated above, Plaintiff could have asked the trial judge to provide an adverse inference instruction to the jury regarding spoliation of evidence. Although the present record does not reflect whether that instruction was given, the fact that the trial judge did give the instruction weighs heavily toward a conclusion that the proceedings were fair, while the fact that the instruction was not asked for is Plaintiff's own fault. If the trial judge refused to give the instruction upon request, and Plaintiff properly preserved an objection to the refusal, then the judge's decision presents a basis upon which the verdicts could be reversed on appeal. Under none of these scenarios, however, has Plaintiff been unfairly prejudiced. Furthermore, as the Court has noted, Plaintiff could have moved for a default judgment based on Defendants' alleged abuses regarding Rosenberg. A default judgment on its behalf would have provided the relief Plaintiff seeks here, i.e., to avoid the possible preclusive effects of a jury verdict against it. Again, however, that was an issue that could have and should have been raised and litigated in the earlier trial.

In summary, the Court finds that whether Plaintiff received a fair trial in the Indiana matter is a settled issue and that it is bound by trial judge's conclusion that the trial was fair. Therefore, Plaintiff's contention that this Court should not apply claim and issue preclusion principles to its claims in this case because the issues in Indiana were not fairly tried is without merit.

### C. *Whether Claim or Issue Preclusion Bars Plaintiff's Claims*

Defendants have moved for summary judgment on Plaintiff's claims on the grounds of res judicata. As just discussed, Plaintiff opposed Defendants' motion on the grounds that the Indiana trial was not fairly litigated. Although the Court has rejected that argument, Plaintiff also argues that it would be wrong for the Court to rule on the summary judgment motion before it has had an adequate opportunity to conduct discovery on its claims. The Court notes, however, that whether a claim is barred by res judicata presents a mixed question of law and fact in which legal issues predominate. *See Hammer v. Immigration & Naturalization Serv.,* 195 F.3d 836, 840 (6th Cir.1999); *Blasi v. Williams,* 775 F.2d 1017, 1018 (9th Cir. 1985). In this case, the only element of preclusion that possibly might require any discovery is whether the party to whom preclusion is to be applied was a party or in privity with a party to the earlier litigation. In this case, however, that point is not disputed. Therefore, the Court finds that it is appropriate to determine whether any of Plaintiff's claims are barred by claim or issue preclusion without awaiting any further discovery.[2]

---

**2.** Plaintiff also reminds the Court that it has appealed the judgment in the Indiana case and observes that a judgment that has been reversed or vacated on appeal has no res judicata effect. Plaintiff then relies on *Isibor v. City of Franklin,* 1998 WL 344078, 149 F.3d 1183 (6th Cir.1998), for the proposition that "[t]he Sixth Circuit has suggested that it is prudent for a trial court to defer questions of res judicata, while retaining jurisdiction, until subsequent events clarify the res judicata au-

thority of the previous judgment." *See* Doc. No. 56, at 19.

While *Isibor* is unreported, and therefore not binding, Plaintiff still misperceives its applicability in this case. In *Isibor,* the plaintiff was convicted in state court of resisting arrest. During the state proceedings, the trial judge found that the officers did not use more force than necessary in effecting the arrest. The plaintiff later brought a lawsuit in federal court under 42 U.S.C. § 1983 which alleged

In Part II.B, the Court has set forth the necessary requirements for issue and claim preclusion to apply and, therefore, will not repeat those elements here. As the Court has indicated before, Plaintiff apparently concedes that its RICO and fraud claims are precluded by the Indiana judgment absent a ruling that the Indiana trial was unfair. Despite the apparent concession, the Court will independently review the Indiana jury verdicts as a precautionary measure. Plaintiff additionally argues that its tortious interference with an employment relationship, spoliation, and antitrust claims are not subject to claim preclusion because there is no identity between these causes of actions and those previously litigated. The Court need not address that argument, however, with respect to the spoliation and antitrust claims because they have been dismissed.

Plaintiff's thesis in the Indiana case was that IPSOS–S.A. and IPSOS Insight Marketing used the joint venture negotiations as a pretext to gain access to Plaintiff's trade secrets and proprietary information. Then, once the IPSOS group got the information they wanted, they broke off negotiations with Plaintiff and proceeded to incorporate Plaintiff's trade secrets into their own product, PRE*VISION. The Indiana jury rejected Plaintiff's contentions, finding essentially that no misappropriation occurred and that IPSOS did not incorporate ARS Persuasion into PRE*VISION.

▅▅▅ In this case, Count I alleges that Defendants derived income from a pattern

of racketeering, namely mail fraud and wire fraud, and then invested said income in an enterprise whose affairs affect interstate commerce in violation of 18 U.S.C. § 1962(a). Plaintiff's allegations of mail fraud and wire fraud are based almost exclusively on alleged misrepresentations which were made during the joint venture negotiations that Plaintiff claims were just a pretext to obtain its ARS Persuasion trade secrets. These claims of mail fraud and wire fraud, however, are clearly precluded by the Indiana jury's findings that Plaintiff never disclosed to Defendants any information that was not already available through proper means and that Defendants never had any access to ARS Persuasion trade secrets. Similarly, Count III, which alleges that Defendants conspired to violate § 1962(a) in violation of 18 U.S.C. § 1962(d) is precluded because of the failure to state a claim for the substantive violation of § 1962(a). *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (2000); *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir.2000).

Count II of the Second Amended Complaint alleges that Defendants violated 18 U.S.C. § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity. This claim asserts as predicate acts mail fraud and wire fraud related to the alleged theft of Plaintiff's trade secrets. The Court has already held, however, that proof of those predicate acts is precluded by the findings of the Indiana jury. This claim also alleges predicate acts of mail fraud, witness tam-

that the officers used excessive force to arrest him. The officers moved for summary judgment on res judicata grounds because the state law provided that a person may resist arrest where the officer uses more force than is necessary to make the arrest. The district court ruled that the plaintiff's claims were not res judicata. The Sixth Circuit disagreed on appeal, finding that plaintiff's claims were barred. *See Isibor*, 1998 WL 344078, at *4–5.

Importantly, for purposes of this case, the Court did reach the merits of the res judicata arguments. It was not until *after* doing so that the Court remanded the case to the district court with instructions to retain jurisdiction pending disposition of plaintiff's state court criminal appeal. *See id.* at *5. Therefore, nothing in *Isibor* suggests that this Court should refrain at this time from reaching the merits of the res judicata issues.

pering, obstruction of justice, bribery, unlawful provision of a gratuity, travel in aid of racketeering, and interstate transportation of stolen goods which all center around Defendants' recruitment and hiring of Karl Rosenberg. Although stated in the technical terms of the individual predicate offenses, these alleged offenses clearly attempt to cast doubt upon the reliability of the Indiana proceedings. As the Court has stated, however, the fairness of that trial has been conclusively established. Accordingly, Count II of the Second Amended Complaint is precluded. Furthermore, as was the case with Plaintiff's § 1962(a) conspiracy claim, because Plaintiff has not stated a claim for a violation of the substantive offense, the § 1962(c) conspiracy claim alleged in Count IV of the Second Amended Complaint fails as well. *See Efron,* 223 F.3d at 21; *Howard,* 208 F.3d at 751.

■ For similar reasons, the Court finds that Count VII, which states a claim for tortious interference with a business relationship is precluded also. This essence of this claim is that Defendants allegedly hired Karl Rosenberg for the purpose of obstructing the Indiana proceedings. As the Court has just stated, however, the issue of the fairness of those proceedings has been settled in Defendants' favor. Because the results of that trial were fair, Plaintiff suffered no injury as consequence of Defendants' alleged tortious conduct.

■ Finally, the Court finds that the claims for actual and constructive fraud alleged in Counts V and VI are precluded as well. These two claims allege that Defendants misrepresented that they had no intention of offering revised PRE*VISION, or Next*TV in the United States. Plaintiff claims that revised PRE*VISION incorporates the trade secrets or proprietary information of ARS Persuasion. *See* Second Amended Complaint ¶¶ 75–77.

This contention is precluded, however, by the Indiana jury's findings that Defendants did not misappropriate ARS Persuasion technology and that Defendants independently developed PRE*VISION. Because revised PRE*VISION does not use Plaintiff's ARS Persuasion technology, no harm resulted from Defendants' statements that they would not introduce it in the United States.

*Conclusion*

In conclusion, the Court finds that Counts I–VII of the Amended Complaint are foreclosed by the results of the Indiana trial. In addition, the claim asserted for spoliation of evidence in Count VIII should have been raised in the earlier proceedings. Finally, the claim in Count IX for predatory hiring in violation of the Sherman Antitrust Act fails to state a claim for relief because it fails to allege a continued pattern of compromising Plaintiff's employees. Accordingly, the Court finds Defendants' motion for summary judgment (Doc. No. 52) to be well-taken and it is **GRANTED.** Plaintiff's motion to hold in abeyance the ruling on Defendants' motion for summary judgment (Doc. No. 55) is not well-taken and is **DENIED.** All other pending motions (46, 51, 53, 54, 61, 67, 68, and 72) are **MOOT.**

**IT IS SO ORDERED**